Good morning, Your Honors. It's a pleasure to be here. Your Honor, I'm here on behalf of Mr. Sawyer, and this is an appeal from a re-sentencing. Mr. Sawyer submits that the re-sentence of 25 years was contrary to this Court's mandate in which the District Court continued in the omronious view that Mr. Sawyer was a danger to the community and that his horrendous childhood was an aggravating and not a mitigating factor, as this Court clearly stated in the summary order and mandate to the Court below. Now, in this, I think it's a fair reading of this transcript, that there were repeated disagreements by the District Court judge with this Court's mandate and saying that the Court still disagreed. I will only put to rest, if there's any doubt, that the Court below acted contrary to what this Court said to do, is after the judge imposed the 25-year sentence, the defense counsel respectfully stated to the Court how the Court had characterized and stated the psychiatrist or psychologist report was not accurate. And the judge said, yes, I accept everything, but this is not a guarantee, and then the judge said this as justification for the 25-year sentence. It is the very horrific upbringing that Mr. Sawyer has had that in large part leads me to the conclusion that he remains a danger to the community. So it's the coupling of the two things that this Court said were the errors committed by the Court initially . . . Yes, Your Honor. And I think what we are stepping into as an area of Judge Jacobs there is the requirement of a District Court judge after an opinion and order by this Court in which it says to re-sentence in conformity with this Court's opinion, the requirement that it becomes law of the case and that there is the mandate rule. And if I may, and out of this Court's precedent, in Ben Ziz's states, the mandate rule, and this is a quote, compels compliance on remand with the dictates of the superior court and forecloses re-litigation of issues expressly or impliedly decided by the appellate court. It doesn't mandate compliance with our views. I mean, the judge is entitled to her views. The question is whether she has complied with the terms of the mandate. And there was a five-year reduction from the point of view of your client. What difference does it make whether the reduction is based upon danger to the community and horrendous upbringing or his behavior in prison five years, his five years is most particularly from the point of view of your client who would have to serve those months? Judge, it is, it was an additional basis that he was entitled to a reduction in his sentence in addition to a re-sentencing where those other factors, critical factors that were the primary driving factors in why he got such a long sentence would have been properly weighed as they were not weighed. Was one of the considerations folded into the reduction in recognition of his performance in prison that he had completed some kind of therapy? No. He, why he, and the judge was very clear that the judge was not, was in the same stance as to, he was a danger to the community and that his childhood was an aggravating, not mitigating factor. And this court in the summary order said clearly the opposite of that. When the judge gave the reduction of five years, the judge said, now I'm going to, this is a summary, but the key words I'm going to say are straight from what the judge said on it. The judge said, I still believe thirty years is the appropriate sentence. And then the judge said, however, the court now notes . . . However, that's the word that you listen to when you represent a defendant in sentencing. Well, it, well, it is in, in terms of here, I'm saying what I think the meaning here is, is that the, that the one basis then that the judge said, however, the court notes that he has had extraordinary post-sentencing rehabilitative efforts while incarcerated. Now that's Pepper versus United States. That's rehabilitative. Rehabilitation from what? He seemed to have been a perfect citizen, but for this one thing. Is, he, and the way it works in prison is that you cannot get sex offender treatment until toward the end of your term of imprisonment. The court in a transcript reflects that he has not had that yet. What he had done that, what the court was talking about was that he had become valedictorian of his class in the GED program. He had completed a number of other programs. Perhaps it's also an allusion to how strongly that he was making efforts to follow a new path, but it was not from the sex offender treatment, and that was the critical thing when you're going to whether he is a danger to the community or not. I would say, though, that by giving the five years, it is actually contradictory then to a finding that he is some extreme danger to the community when he gets out. If you have, this court said there was no specific evidence as to that. In fact, the evidence was contrary to that. The evidence was that he was atypical of someone with this type of crime. There were a few images. Hypothetically, suppose Judge D'Agostino had reduced the sentence by 15 years and said that . . . or by 10 years and said that she was doing that only because of the fact that he was valedictorian of his class. Would that have been a failure to comply with our mandate? With the additional statements that have been made in this record, I would say yes. The additional statements . . . if we say, for example, that the judge is saying here that I'm right, it's thirty years, I disagree with the Second Circuit, but I'm going to go down ten years for his post-sentencing rehabilitation, it's not going to . . . I've been here twenty-five years and I've yet to read a transcript in which the trial judge says that there's an error in my sentence and the superior wisdom of the Second Circuit has convinced me that I was wrong and therefore I'm going to mend my ways. Yes. I agree, Judge. This transcript could have read and fully fine if the judge had wanted to express that I disagree, but I'm going to do what I've been told. That's not what this said at all. I say repeatedly and what I've read, I think, confirms what I'm saying. This Court also indicated that he was entitled to a significant reduction based on these facts. You pointed out that the five-year reduction based on rehabilitative efforts is a contradiction of what the judge had said about his danger to the community. Doesn't that indicate that whatever the judge was saying, what the judge was doing was complying with the mandate and reducing the sentence even though, as you say, it makes no sense because what she said to justify it, I agree with you, doesn't really make much sense unless it is a way of complying with the mandate while saying, I really don't agree with the Second Circuit's view of this. I think it all affects the degree of reduction and so here we have then, and even in the government, in the government's presentation and argument, the government recognizes that this Court is saying there has to be a lesser sentence, so what is the least to try to argue to do? The judge and the government said, Judge, give a . . . and the word was a modest reduction, five years. The judge did not, as I said, I'm just saying I believe it's a fair reading of this transcript that the judge did not say, I am going to treat his horrendous childhood as a mitigating factor. I am going to say that he's not a danger to the community and hence this is why I am giving the sentence I am giving. We would be in a different conversation right now and that would be whether it was a substantively reasonable sentence that would be after compliance with this Court's mandate. I submit that it wasn't in compliance so that we have here a modest reduction on a different basis but he never got consideration and fair weighing of those other two elements. The weighing of those elements went against him when they should have gone for him. His contention then would be that reduction would have been much more. You've reserved a minute's rebuttal. Thank you. We'll hear you then, sir. May it please the Court, Stephen Clymer for the United States. I'm accompanied today by Michael Guderian who is an Assistant United States Attorney who assisted on the brief. We ask the Court to affirm here. I'd like to begin by clearing up what I think were some inaccurate representations about this Court's summary order and what the District Court did. In its summary order, this Court never said to the lower court, you cannot consider dangerousness as a factor. The remand did not take any of the 3553A factors off the table. It suggested to the District Court that it had to weigh the factors somewhat differently than it had and it instructed the Court that a 30-year sentence was substantive. Here we have grudging compliance perhaps, but compliance nonetheless. She didn't give us an A, even in this era of academic inflation. I wouldn't quibble with that characterization, Your Honor, but what she did do was comply with the remand mandate and that is all that's required. She didn't consider the factors that we asked her to consider and made this decision based on a factor that came up afterwards, his post-imprisonment rehabilitation. That wasn't part of the order at all, which I don't think is wrong to consider, but she didn't consider the issues we asked her to consider. I agree partially and disagree partially, Your Honor. She clearly did and properly did consider post-incarceration rehabilitation. I have no objection. No disagreement there. I believe that the Court, however, fully considered the upbringing. I don't think it's accurate to say, and I didn't hear Judge Jacobs to be saying that the District Court relied solely on post-sentencing rehabilitation as the basis for the five-year reduction. I think the Court considered that along with all the other factors in the case. Here's another place where I quibble, I think, a bit with my colleague here. The District Court did not ignore the fact that Mr. Sawyer's horrific upbringing was a mitigating circumstance. The Court credited Mr. Sawyer 55 years of a reduction from the guideline sentence on that basis. What the Court recognized, however, and I believe this is correct and I believe it's evidence, that his upbringing also contributes to his dangerousness. That's tragic, that's undeserved, but that's undeniably true. And is that contrary to our earlier decision? I don't believe so, Your Honor. I don't think this Court ever said you cannot consider Mr. Sawyer's upbringing in this way or that way. I think it'd be improper for this Court to do so. I think all the Court said in its original order and properly said is the Court has to properly give way to various factors. The Court gave greater weight to the mitigating factors the second time around than it had the first time around. I believe that's consistent with this Court's remand. But I don't think that this Court said to the District Court judge, you have to ignore reality. You have to ignore the fact that because of Mr. Sawyer's upbringing, he doesn't understand the boundary between adults and children in sexual matters. He doesn't understand that sex with children is not an entitlement. He doesn't understand that his conduct in these matters is inappropriate. Those are things his own psychiatrist said about him unequivocally in that report. I don't believe this Court was telling the District Court it had to ignore those things. It wouldn't be appropriate, in fact, it'd be illegal for this Court to say that because there's a federal statute that empowers District Courts to consider any relevant factors for purposes of sentencing. I'm not mindful of the ground we're treading and how close to the line we are with directing a District Court to do anything. It's on our mind, our collective minds. Here's the concern I have. Mr. Sawyer comes to this Court and says the only sentence that was substantively reasonable in this case was the statutory mandatory minimum. That is both inconsistent with the law and inconsistent with the facts. It's inconsistent with the law because in Broxmire this Court held that, and Judge, you may not agree with the outcome, and Judge Jacobs may not agree with the outcome. The two dissenters. I understand that, Your Honor, but I... A different case. Well, the other case would be Brown, Your Honor, and I won't do any better there. But my point is this. I don't think that any of you would disagree with the proposition that if a court is going to hold, an appellate court is going to hold, that the only substantive reasonable sentence is the statutory mandatory minimum, then we have distorted this doctrine beyond all recognition. I agree. I don't think it's our place to say you must sentence this person to the statutory minimum, but we're trying to find a way to instruct the District Court to look at the statute presented to us. That's all. And we think that the District Court avoided doing it. And I have to take issue with that, Judge, because if you look at Judge Giagostino's sentencing, she was duty-bound to start at an 80-year sentence. It's . . . Gall makes that crystal clear that the starting point is the guideline sentence, and the guideline sentence here was an 80-year sentence. She had no choice in that matter. So that is her analysis. He says many times that I reduced this by 50 years. And she . . . Judge, this time she reduced it by 55 years. And although there were mitigating circumstances here, Judge, there were aggravating circumstances as well. So she had reduced it . . . let's say the guidelines were other than they are, and she had reduced the sentence by 100 years. Would you think that that's a significant consideration for identifying leniency? I think it would depend, in part, Your Honor, on how the case was charged. Clearly, the government has some control over what that number is going to be in these cases by adding on additional charges. I understand that, and we could make the guideline sentence 1,000 years or months if we wanted to. But that didn't happen here. This was a case that was charged conservatively. There were two victims. There was one production count for each victim, and there were other victims on the receipt count. The government charged this case at the minimum, not the maximum. Now, I think reasonable minds can disagree about how the guidelines comes up with that 80-year figure. But it does come up with that 80-year figure, and that was not an artificially manufactured figure. Do you think reasonable minds could disagree that 80 years might be too long a sentence? But no reasonable minds disagreed with that in this case, Judge. Judge Giagostino recognized that that was too long a sentence. She recognized that from the outset. My only point is, she credited Mr. Sawyer for the mitigating circumstances. Maybe you or all the judges on this Court would have credited him differently, but that's not the test that applies here. The test that applies here is, is this substantively unreasonable? You see, the situation is odd, because it is as though the Second Circuit had remanded a case and said in a theft case, you ought to consider the terrible poverty in which the defendant was raised. The judge said, you know, I'm going to consider that, and it really means he has no respect for private property, so I'm going to increase the sentence. It's almost a willful misunderstanding of what the Second Circuit is instructing. When we say, take into consideration the fact that in his upbringing, he was treated worse than plant life, which is not my finding. That's the finding of Judge Giagostino. I think there's a suggestion that that should be considered as mitigation. And it wasn't. Well, Judge, and that's where I disagree with you. I don't know how this Court can say it wasn't when there was a fifty-five year reduction from the place that the judge was duty-bound to start from. You may not like that point or agree with that point. She has no role, she has no say in that. That's where she had to start from. So she has a range between eighty years and fifteen years. She has an obligation to sentence this defendant between those ranges. She comes down fifty-five and she goes up ten. I don't understand why that isn't crediting Mr. Sawyer considerably for the mitigating circumstances that were present here. And there clearly were aggravating circumstances. You know, Judge, it's interesting because I looked at the Sentencing Commission statistics, taking from Judge Pooler's dissent in Brown, where you looked at the averages. In 2016, under 2G1 . . . 2.1, the guideline applicable here, for a Category 1 offender like Mr. Sawyer, the mean sentence was three hundred and four months. Here the sentence is three hundred months. So what Sawyer is asking you to do is find a sentence that's slightly below the mean sentence for all offenders like him, some of whom don't molest four and six-year-old children, some of whom don't molest his own nieces, some of whom don't also possess images of sexual torture of other very young children, get essentially the same sentence he gets. My point is, that is not a substantively unreasonable sentence. Could Judge D'Agostino have said things that suggest greater compliance with this Court's remand order? The answer is probably yes. But I think the point is, as I said at the outset, grudging compliance is compliance nonetheless. And my point here is, there was compliance. Unless the Court has other questions, I'd ask you to affirm it. Thank you for your time. Thank you. Counsel. Yes. If we wanted to, we'll give Mr. Sawyer additional relief. Could you describe a pathway that we could take, bearing in mind that we can't intrude on the District Court's discretion to sentence? Yes. I think the most solid, if I understand, Judge Pooler, your question, if this Court agrees that this needs to be sent back, is that it be sent back to a new judge. And I laid out in the brief the various criteria for that, and I submit that this case meets those criteria quite strongly. I did mention in it, as an alternative, if this Court were of the view, and I recognize this is maybe pushing . . . it is pushing the envelope, that if this Court were to view the facts of this case such that a substantively unreasonable sentence would be any sentence over fifteen years under the facts of this case, that this Court itself could impose . . . I hate to mention the word, but wouldn't that run counter to Brocksmeier? Well, and I've looked at the cases that . . . And Brown. Yes. I think the Court has the discretion in that unique situation. It is a . . . supposing if the mandatory minimum sentence were not there, and you were to look at this case and say, you know, really anything over ten years would be a substantively unreasonable sentence, but we're compelled to impose fifteen, well, we can do that rather than having that sent back, but . . . I don't think we have the power to say that the mandatory minimum is the only substantively reasonable sentence. I think that we would just be wrong on the law if we tried to do that, if we thought to do that. What's your response to your adversary's argument that all these sentences may be crazy, but that this one happens to be close to the average of crazy? Well, every case is taken on its own. That's why we look at . . . that's why we consider averages, and if you want to know whether something is an extreme outlier, wouldn't you expect that the number of months would deviate sharply from the average? Well, I would say first that to even look at what the sentence is presupposes that the process by which the sentence was determined is in accordance with this Court's instruction and the factors properly weighed, so that if we don't have that process correct, we can't then say, all right, now we'll place this sentence and see what it is within the average. I'll also say that there's so much that's been said here and was said by the judge about, I gave 50 years departure first time, and this is 55 years departure. Well, two reasons why that is, I would submit, an incorrect way of justifying a sentence. First, what are we departing from? We're departing from the child pornography guidelines, and they're guidelines which are . . . they're not based on empirical study. There is great caution and care, and this is the kind of case where I submit those guidelines. I don't think they're even subject . . . they're even . . . yes, technically you start, but then you can say it's an improper starting point. The other thing, and what was used was the word anchor. We both have taught at Yale. We both have a colleague, Professor Reklinsky, and I have him come to my class and teach. The concept of anchoring, and it's a psychological concept, and it's really critical, what is the anchor? What is the starting point? And if it is an improper starting point, if there's a problem with the starting point, then whatever you depart to, or the variance from that starting point, becomes really an invalid analysis as to whether something is justifiable or not. The second thing that I would say about it is that it violates Gaul, the Supreme Court opinion, and it had been argued in Gaul that you cannot justify a sentence, and you cannot use as a standard the percentage variation or departure from the guideline. So that's what we have here. That can't be the way to analyze whether this is . . . this was a good sentence by saying, gee, 55 years. Well, with the guideline, it said 1,000 years, and you said, I did 900 years, and I mean, it just . . . it goes . . . it defies common sense. What is there in the record to call seriously into question the trial judge's conclusion that your client is an individual warped by his childhood who will probably always be a danger to the community because he does not distinguish between adults and children as sex objects? Well, the psychologist's report, absolutely, and this is where, again, if you can look at it from a procedural standpoint and also a substantive analysis standpoint of how the court erred. Procedurally, this court in the summary order relied on that psychologist's report to say that it supported, and it was evidence of, why leniency should be imposed. So here, the district court took the psychologist's report, took, selected, and I would say it was a biased selection from that psychologist's report to say it justified an increased sentence. So first of all, I would say it's contrary to this court's summary order. It's also contrary to the psychologist's report, which was, as this court recognized and as it was intended and said by the psychologist, meant to show that leniency should be imposed. The reason why leniency should be imposed here is that, yes, he was a terrible victim himself. Yes, he went through this horrible, tragic childhood, and yes, it created problems in him which were the producing cause of the conduct here. But the psychologist went on to say, I have, he's been honest with me. I have put him through a battery of tests, and he, in my opinion, is going to respond to treatment, and that he will be less of a risk. Now that is a, we cannot say we don't have crystal balls, how whether someone down the road, we're talking about a long time down the road, how they can change. But we have to take what's in front of us and use them as the best facts that we can to make good judgments. And there was a fact that was positive for Mr. Sawyer and was taken by the judge out of context, only taking, repeating things prior to treatment to say that justifies a higher sentence. And this is what I mean by it being contradictory to give him credit for this extraordinary rehabilitation. It was not treatment, but they were indicators, again, additional specific evidence that this is someone who can respond positively to education and help. He was responding very positively. So it's again an indication that by the time he hits treatment, that he's going to respond positively to that also. Thank you. Thank you both. Well argued. We will reserve the decision. Thank you. Thank you. Court is adjourned.